# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| JORGE LUIS GONZALEZ; aka GEORGE | § | CASE NO: 07-36802 |
| GONZALEZ, SANDRA GONZALEZ; fka | § | |
| SANDRA PEREZ | § | |
| Debtor(s) | § | |
| | § | |
| | § | CHAPTER  13 |

## AMENDED MEMORANDUM OPINION

### Summary

Jorge and Sandra Gonzalez filed their third chapter 13 petition on October 1, 2007.  The Gonzalezes timely filed a chapter 13 plan on October 16, 2007.  The Gonzalezes' plan proposed to cure payment arrearages on their home in Tomball, Texas.  About one month later, the Gonzalezes decided to surrender their Tomball home.  Nevertheless, the Gonzalezes' projected disposable income analysis included payments on the home.  The Bankruptcy Code requires debtors to devote their projected disposable income to their chapter 13 plan. 11 U.S.C. § 1325(b).

The Gonzalezes and David Peake, the chapter 13 trustee, dispute how the Court should consider future payments contractually due on the to-be-surrendered home when the Court determines the Gonzalezes' projected disposable income.  Because the Gonzalezes have income that is above the median income for the state of Texas, the Court must resolve the dispute under § 1325(b)(1)–(3).

Trustee Peake contends that, as a matter of law, the Court should not consider the future payments.  Rather, the Court should consider the Gonzalezes' circumstances as of the plan confirmation date and allow only those payments being made on the confirmation date.  The Gonzalezes contend that, as a matter of law, the Court must consider the future payments.  Under the Gonzalezes' view, the Court must allow all payments contractually due on the petition date.

1

Essentially, both parties adopt a "snapshot" view of § 1325(b)'s projected disposable income calculation. Their views differ largely over when the picture should be taken. Trustee Peake contends that the "snapshot" is taken on the confirmation date. The Gonzalezes contend that the "snapshot" is taken on the petition date. The Court rejects both views. Section 1325(b) requires courts to take a motion-picture view. A chapter 13 case is not a static "snapshot." A chapter 13 case is a moving saga.

For the reasons set forth in this Memorandum Opinion, the Court concludes that the Gonzalezes' payment amount is a mixed question of law and fact. The Court holds:

- Trustee Peake's objection to the Gonzalezes' currently proposed plan is sustained.

- If the Gonzalezes propose an amended plan, and an objection is filed, the Court will conduct an evidentiary hearing. The Gonzalezes' allowed deductions will depend on the projected circumstances shown at the evidentiary hearing.

- The Gonzalezes may deduct future home mortgage payments for the period during which the home is projected to be retained.

- The Gonzalezes may deduct the mortgage and rental expense allowed by § 707(b) for the period during which they have no projected payments on debt secured by a home.

- If the Court projects that the Gonzalezes will incur secured debt to purchase a replacement home, the Gonzalezes may deduct payments on the new debt for the appropriate period.

## Background

The Gonzalezes, like all chapter 13 debtors, were required to file various documents. The documents included a schedule of current income and expenditures (§ 521(a)(1)(B)(ii)), and a statement of their monthly net income, itemized to show how the amount was calculated (§ 521(a)(1)(B)(v)). The Official Forms for the first requirement are Schedules I and J. The Official Form for the second requirement is Form B22C.

Courts use Form B22C to evaluate a debtor's compliance with § 1325(b)(1). If the

trustee or the holder of an allowed secured claim objects to confirmation, § 1325(b)(1) requires debtors either to devote all of their "projected disposable income" to their chapter 13 plan or to pay holders of unsecured claims in full. Form B22C utilizes various formulas to calculate disposable income. The Gonzalezes' initial Form B22C projected disposable income calculation resulted in negative $1,815.00 per month. Based on this negative projected disposable income, the Court could confirm a chapter 13 plan that proposed to pay unsecured creditors nothing.

The Gonzalezes' schedules I and J showed a different financial reality. The Gonzalezes' schedules I and J estimated an average monthly income of $7,464.73 and expenses of $6,401.00. The difference between the Gonzalezes' excess income under their schedules and their Form B22C arises largely from inclusion of payments on the Tomball home on their Form B22C. Debtors' Form B22C calculation included forecasted monthly payments of $4,539.00 on the home.

However, the Gonzalezes will never make an actual payment on the to-be-surrendered home during their plan period. Prior to a hearing on their proposed plan, the Gonzalezes chose to surrender the Tomball home and lease a new residence.[1] On January 2, 2008, the holder of the deed of trust on the home filed a motion for relief from the stay (docket no. 51). The Gonzalezes did not oppose the motion. The Court granted the motion on February 1, 2008.

On December 11, 2007, Trustee Peake filed an Objection to Confirmation of the Gonzalezes' plan (docket no. 43). Trustee Peake alleges that the Gonzalezes' Form B22C contains miscalculations that erroneously reduce the Gonzalezes' disposable income. Trustee

---

[1] The Court will assume that, as of the petition date, the Gonzalezes intended to retain their home. The Gonzalezes' original plan provided that they would retain their home. In their brief, the Gonzalezes claimed that they intended to retain the home on the petition date. The claim is buttressed by the fact that the Gonzalezes filed their bankruptcy petition the day before a scheduled foreclosure sale. Both Trustee Peake and the Gonzalezes argue that the issue before the Court should be determined as a matter of law. Of course, the Gonzalezes' intent is a factual issue that, if relevant, may be challenged at an evidentiary hearing.

Peake alleges that the Gonzalezes overestimated certain taxes listed on line 30 in the amount of $1,831.00, and improperly deducted mortgage payments for the Tomball home. During the initial hearing on Trustee Peake's objection, the parties agreed that the mortgage payment issue was dispositive. The disputed tax amounts will not affect this proceeding's outcome if the Gonzalezes are entitled to the mortgage deductions. The Court will consider the tax issue during the confirmation hearing if an amended plan is filed. On March 25, 2008, the Court continued the plan confirmation hearing and requested briefing on the issue of whether the debtor's Form B22C projected disposable income calculation may include payments on a surrendered home.

The mortgage payment deductions significantly impact the amount unsecured creditors will be paid. The Gonzalezes' amended plan proposes to pay $1,060.00 per month to the chapter 13 trustee. The payments are almost exclusively devoted to IRS taxes, bankruptcy attorney fees, and loans on two vehicles. The Gonzalezes propose to pay unsecured creditors 1% of an estimated $70,293.96 in total unsecured claims, or $522.64 over the course of the 60-month plan.

If the Court sustains Trustee Peake's objections, the Gonzalezes would not be allowed the $4,539.00 monthly home mortgage deductions. Instead, the Gonzalezes would be allowed only the housing deduction allowed for a family of five pursuant to § 707(b). As of the Gonzalezes' petition date, that amount was $1,012.00 per month. This one change would increase the Gonzalezes' disposable income by $3,527.00.[2] The Gonzalezes' original Form B22C reflected negative monthly disposable income of $1,815.00. Trustee Peake's adjustment would produce a positive monthly disposable income of $1,712.00, without considering the tax issue.[3] The

---

[2] The Court arrives at $3,527.00 by substituting the $4,539.00 in payments on the Tomball home with the $1,012.00 amount allowed by § 707(b). Because administrative costs fluctuate with the amount paid to the chapter 13 trustee, these amounts are only estimates.

[3] The Court arrives at $1,712.00 by adding $3,527.00 to the Gonzalezes' projected disposable income of negative $1,815.00.

adjustment would result in a plan that pays unsecured creditors 100% of their $70,293.96 in claims.[4]

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).   Venue is proper under 28 U.S.C. § 1408.

## Law

To resolve this case, the Court must analyze multiple detailed statutory provisions that have been subject to inconsistent interpretations.

"The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)).  "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). "The plain meaning is not conclusive if 'the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. at 242 (quoting *Griffin v. Oceanic Contractors Inc.*, 458 U.S. 564, 571 (1982)).

---

[4] Because § 1325(b) allows confirmation of a plan that pays unsecured creditors in full, the Gonzalezes' actual monthly payment would   need to be increased by approximately $1,200.00 per month to pay their unsecured creditors' $70,293.96 in claims.

## Analysis of § 1325(b)

A wealth of published opinions analyze calculation of projected disposable income under § 1325(b)(1)(B).  Most opinions carefully consider presumed legislative policy and focus on selected language from portions of § 1325(b).  Yet the opinions are uniform neither in result nor in reasoning.

Section 1325(b)'s language is difficult to parse.  This Court has developed a flow chart that gives meaning to and integrates each provision of § 1325(b).  Individual segments of the flow chart are included throughout this Memorandum Opinion.   Appendix A to this Memorandum Opinion contains a unified flow chart.  Appendix B reproduces § 1325(b) in its entirety.  Appendix C reproduces § 707(b)(2)(A)–(B).

The Court's interpretation of § 1325(b)(1)(B)'s projected disposable income requirement is set forth below.

### A. Triggering the Projected Disposable Income Requirement

The first question is whether § 1325(b)(1)(B)'s projected disposable income requirement has been invoked.  To invoke the requirement, two events must occur: (i) an objection; and (ii) less than 100% payment of unsecured claims. 11 U.S.C. § 1325(b)(1)(A)–(B).

i. Objection to Confirmation



¹ Issue as to whether Court may sua sponte raise
objection is beyond the scope of this opinion.

Section 1325(b) only applies if the chapter 13 trustee or a holder of an unsecured claim

objects to confirmation of a proposed plan.  Section 1325(b)(1) provides:

> If the trustee or the holder of an allowed unsecured claim *objects* to the
> confirmation of the plan, then the court may not approve the plan unless, as of the
> effective date of the plan—

11 U.S.C. § 1325(b)(1) (emphasis added).

Trustee Peake has objected to the Gonzalezes' proposed chapter 13 plan.  Accordingly,

the Court must next analyze whether the Gonzalezes' unsecured creditors will be paid in full

under the proposed plan.

ii. Unsecured Claims Paid in Full



If the trustee or the holder of an unsecured claim objects to confirmation, then the Court must find either that the debtors commit all of their "projected disposable income" to the plan, or unsecured creditors will be paid in full. Section 1325(b)(1)(A)–(B) provides that if the trustee or an unsecured creditor objects to confirmation, then the court can not confirm the plan unless:

> (A) the value of the property to be distributed under the plan or on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(A)–(B) (emphasis added).

The Gonzalezes' proposed plan estimates a 1% distribution to unsecured creditors. Accordingly, the issue before the Court is whether the Gonzalezes' proposed plan meets the projected disposable income requirement imposed by § 1325(b)(1)(B).

**B. Projected Disposable Income Calculation**

Section 1325(b)(1)(B) requires a chapter 13 debtor to devote all "projected disposable income" to their chapter 13 plan unless the plan proposes to pay unsecured creditors in full.

Section 1325(b)(2) defines how the court must calculate "disposable income."  Section 1325(b)(2) provides:

> For purposes of this subsection, the term *"disposable income"* means *current monthly income* received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less *amounts reasonably necessary to be expended*—
>
> (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2) (emphasis added).

Section 1325(b)(3) defines "amounts reasonable necessary to be expended" for debtors with current monthly incomes above the state median for a family of the debtor's size ("above-median debtors").  Section 1325(b) does not define "amounts reasonably necessary to be expended" for debtors with current monthly incomes below the state median for a family of the debtor's size ("below-median debtors").  Section 1325(b)(3) provides:

> *Amounts reasonably necessary to be expended* under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), *shall* be determined in accordance with subparagraphs (A) and (B) of section *707(b)(2)*, if the debtor has current monthly income, when multiplied by 12, greater than—[the median state income of a family of the debtor's family size].

11 U.S.C. § 1325(b)(3) (emphasis added).

Section 707(b)(2)(A)–(B) is referred to as the "means test." The provision generally requires debtors to calculate an average net income based on a statutory formula. 11 U.S.C.

§ 707(b)(2). The formula allows debtors to deduct payments on secured debt and basic necessity expenditures in an amount provided by IRS guidelines. *Id.* If a debtor's "means test" net income calculation exceeds a statutory-provided amount, the statute imputes a presumption that relief under chapter 7 would be "an abuse of" chapter 7. *Id.* The "means test" has the practical effect of forcing more debtors to file chapter 13 rather than chapter 7 bankruptcy petitions.

Based on the above statutory text, the Court concludes that calculation of projected disposable income under § 1325(b)(1)(B) requires consideration of five components: (i) current monthly income; (ii) projected current monthly income; (iii) allowed expenditures; (iv) projected allowed expenditures; and (v) amounts reasonably necessary to be expended for projected allowed expenditures. 11 U.S.C. § 1325(b)(1)–(3). The projected disposable income calculation also requires courts to distinguish between above and below-median debtors. 11 U.S.C. § 1325(b)(3). The first four components apply equally to both above and below-median debtors. However, the statute provides separate definitions of the fifth component, amounts reasonably necessary to be expended for projected allowed expenditures, for above and below-median debtors. 11 U.S.C. § 1325(b)(2)–(3).

The Court explains the five components below.

### i. Current Monthly Income

Current monthly income is defined the same for both above and below-median debtors. § 101(10)(A). Section 101(10)(A) generally defines current monthly income as the debtor's average income during the six-month period prior to filing a bankruptcy petition.

### ii. Projected Current Monthly Income

As described later in this Memorandum Opinion, many, if not the majority of courts, hold that § 101(10)(A)'s historical-based income calculation is only the starting point for determining

current monthly income under § 1325(b)(1)(B)'s projected disposable income calculation.  These courts generally hold that § 1325(b)(1)(B)'s projection language requires Courts to consider whether the historical current monthly income provided by § 101(10)(A) is an accurate depiction of what the debtor's income will be going forward during the course of the debtor's chapter 13 plan.  The Courts start with the § 101(10)(A) amount and then make adjustments consistent with the debtor's projected circumstances.  Because the parties do not dispute the income portion of the Gonzalezes' projected disposable income calculation, the Court does not consider the meaning of projected current monthly income in this Memorandum Opinion.

### iii. Allowed Expenditures



The third component requires the Court to determine that the expenditure is for one of four allowed expenditures.

Section 1325(b)(2) provides the general formula for determining allowed expenditures for both above and below-median debtors.  Section 1325(b)(2) requires an expense to be for an expenditure for maintenance or support, a post-petition domestic support obligation, a qualified

charitable contribution, or an allowed business expense. § 1325(b)(2)(A)–(B). If the expenditure does not qualify under § 1325(b)(2)(A)–(B), the expenditure is wholly disallowed. For a disallowed expenditure, analysis ends with § 1325(b)(2).

The Gonzalezes' mortgage payments are not for a domestic support obligation, a qualified charitable contribution, or an allowed business expenditure. However, the Court finds that a mortgage expenditure is an expenditure for the "maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2). The Gonzalezes must have housing. Housing is for "maintenance or support." Trustee Peake does not allege that the home is a luxury home or that its retention would be abusive. A deduction for a non-luxury housing expenditure is allowed under § 1325(b)(2)(A)(i). If funds will be paid on the home, they would be allowed in the amount provided by § 707(b)(2).

Others courts have not applied § 1325(b)(2)(A)–(B)'s requirements to above-median debtors. These courts interpret § 1325(b)(2) and § 1325(b)(3) as independent expense standards. For below-median debtors, these courts determine both whether an expenditure is allowed or disallowed and the allowed amount of the allowed expenditure under § 1325(b)(2)(A)–(B). For above-median debtors, these courts determine whether an expenditure is allowed or disallowed and the allowed amount of the allowed expenditure solely under § 1325(b)(3). These courts do not apply the additional requirements imposed under § 1325(b)(2)(A)–(B) to above-median debtors. These courts focus on the word "shall" within § 1325(b)(3) and interpret "shall" as requiring courts to determine an expenditure's allowance and the amount of the allowance under § 707(b)(2) alone. *See, e.g., In re Van Bodegom Smith*, 383 B.R. 441 (Bankr. E.D. Wis. 2008); *In re Sackett*, 374 B.R. 70 (Bankr. W.D. N.Y. 2007); *In re Burmeister*, 378 B.R. 227, 230 (Bankr. N.D. Ill. 2007); *In re Ries*, 377 B.R. 777, 783–84 (Bankr. D. N.H. 2007); *In re Love*, 350

B.R. 611, 613 (Bankr. M.D. Ala. 2006); *In re Renicker*, 342 B.R. 304, 308 (Bankr. W.D. Mo. 2006) ("section 1325(b)(3) replaces the subjective 'reasonably necessary' standard with the objective formula used to determine expenses under the means test"); *In re Farrar-Johnson*, 353 B.R. 224, 228–29 (Bankr. N.D. Ill. 2006) ("For an above-median debtor, then, expenses *must* be calculated under section 707(b)(2); what the debtor lists as expenses on his Schedule J, outrageous or not, is beside the point."); *In re Crittendon*, 2006 WL 2547102 *2 (Bankr. M.D. N.C. Sept. 1, 2006); *In re Oliver*, 2006 WL 2086691 *3 (Bankr. D. Or. June 29, 2006).

Other Courts have, at least implicitly, applied § 1325(b)(2)(A)–(B)'s components to both above and below-median debtors by limiting amounts allowed by § 1325(b)(3) to amounts that a debtor actually expends for maintenance or support. *See, e.g., In re Long*, 2008 WL 1883473 *5–6 (Bankr. E.D. Tex. April 25, 2008) ("Section 1325(b)(3) does not mandate . . . this Court to ignore financial reality and allow an above-median income debtor to deduct an expense amount from her disposable income which admittedly will not be incurred in the future and therefore will not be 'reasonably necessary to be expended for the maintenance or support of the debtor'"); *In re Spurgeon*, 378 B.R. 197, 202 (Bankr. E.D. Tenn. 2007) ("The Court is supposed to use the means test provisions to determine the amounts reasonably necessary 'to be expended' for maintenance and support of the debtor or the debtor's dependents"); *In re McGillis*, 370 B.R. 720, 730 (Bankr. W.D. Mich. 2007) ("section 1325(b)(3) imposes the same requirement upon an above-median-income debtor as it does upon all other debtors: amounts claimed as expenses under section 1325(b)(3) must in fact be ultimately expended"); *In re McPherson*, 350 B.R. 38, 44 (Bankr. W.D. Va. 2006) ("The phrase 'reasonably necessary . . . for support' indicates that the amounts, and the payment of the amounts, must be reasonably necessary for the support of the debtor and any dependent."); *In re Edmunds*, 350 B.R. 636, 643 (Bankr. D. S.C. 2006)

("Congress has mandated that courts allow debtors those categories of expenses recognized under the Means Test so long as those expenses are 'reasonably necessary' and 'to be expended.'").

The Court rejects the conclusion that § 1325(b)(2) and § 1325(b)(3) are wholly independent. Section 1325(b)(3) simply defines the fifth component for above-median debtors—reasonably necessary "amounts" for allowed expenditures. For below-median debtors, Courts have discretion to determine "amounts" reasonably necessary for an allowed expenditure. Section 1325(b)(2) does not define "amounts" for these debtors. For above-median debtors, Congress removed judicial discretion to determine reasonably necessary "amounts" for allowed expenditures. Section 1325(b)(3) provides:

> **Amounts** reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income [above the state median] . . .

(emphasis added). 11 U.S.C. § 1325(b)(3). Nothing in § 1325(b)(3) suggests that Congress intended § 1325(b)(3) to independently define what is and is not an allowed type of expenditure. Section 1325(b)(3)'s use of "shall" refers to "amounts," not determination of whether an expenditure should or should not be allowed in the first place. Allowed expenditures are only defined in subsection § 1325(b)(2)(A)–(B). They are expenditures for maintenance or support, a domestic support obligation, a qualified charitable contributions, or an allowed business expenses. 11 U.S.C. § 1325(b)(2)(A)–(B).

If, as the Gonzalezes suggest, the Court were to accept that § 1325(b)(3) is divorced from § 1325(b)(2), then the Court would be required to authorize deductions for payments on all secured claims, including luxury items. Section 707(b)(2)(iii) authorizes a debtor to deduct average monthly payments on secured debts, generally. Nothing in § 707(b)(2) limits secured

debt deductions to debt arising from expenditures necessary for maintenance or support.  In a chapter 7 case, payments on a yacht or other luxury item may be allowed, but only for the limited purpose of the evidentiary presumption.[5]  Moreover, § 707(b)(3)(B)'s abuse provision could ultimately preclude the deduction.  However, § 1325(b)(3) incorporates only § 707(b)(2), not § 707(b)(3).  Consequently, if above-median debtors' allowed expense deductions were determined solely under § 1325(b)(3), payments on a yacht or other luxury item would be allowed.  Although the Gonzalezes' case presents a claim secured by a home, the same logic applies to both homes and yachts.

iv. Projected Allowed Expenditure



Under the fourth component, the expenditure must be actually *projected* to be paid if it is to qualify as an allowed expenditure during the debtor's plan period.  Section 1325(b)(1)(B) requires debtors to pay all "*projected*" disposable income within their plans. 11 U.S.C.

---

[5] Section 707(b) is utilized to determine whether there is a presumption of abuse by the filing of a chapter 7 petition by a debtor with above-median income. 11 U.S.C. § 707(b). The presumption of abuse is determined on a "snapshot" basis.  Even if there is not a presumption of abuse, a chapter 7 petition may be found abusive based on the "totality of the circumstances." 11 U.S.C. § 707(b)(3)(B). Accordingly, although deductions for secured debt payments on a luxury item would be allowed in determining whether an evidentiary presumption arose, the payments on the luxury item could still be considered in determining whether a chapter 7 petition was, in fact, abusive. *Id.*

§ 1325(b)(1)(B) (emphasis added). Consequently, the Court can not simply ask whether or not an expenditure is an expenditure allowed under § 1325(b)(1)(A)–(B). The Court must consider future circumstances; i.e., "project." The debtor must actually intend to incur expenses on the allowed expenditure during the debtor's plan period.

The Gonzalezes' surrendered home does not qualify as a projected allowed expenditure under § 1325(b)(1)–(2). The Gonzalezes have surrendered their home and leased a new residence. The Gonzalezes will not be living in the surrendered home. Payments on a home that the Gonzalezes will not use do not provide the Gonzalezes maintenance or support. Consequently, the Gonzalezes' mortgage payments do not meet the fourth component.

The Court's interpretation of "projection" is consistent with most opinions interpreting § 1325(b). *See, e.g., In re Graham*, 2008 WL 1775003 *3 (Bankr. N.D. Tex. April 15, 2008) ("Under the 'forward-looking' approach to §§ 707(b)(2) and 1325(b), secured payments deducted on Form B22C cannot continue to be deducted for disposable income purposes if the collateral is to be surrendered."); *In re Spurgeon*, 378 B.R. at 206 ("The court concludes that projecting disposable income allows the court to apply the deduction statute on the basis of events in the chapter 13 case and the terms of the proposed plan."); *In re Ries*, 377 B.R. at 787 ("The Court holds that Projected Disposable Income must also be based on the Debtors' anticipated CMI and Reasonably Necessary Expenses during the plan commitment period."); *In re Renicker*, 342 B.R. at 309 ("Thus, the plain language of § 1325(b)(2) unambiguously indicates that prospective—not historical—expenses are to be used to calculate disposable income."); *In re Love*, 350 B.R. at 613 ("The term 'projected' contemplates forward looking or future orientated approach."); *In re McPherson*, 350 B.R. at 45 ("The 'amounts' referred to in Paragraph 1325(b)(2) are amounts that a debtor will make in the future as provided in the debtor's plan.");

*In re Edmunds*, 350 B.R. at 644 ("The phrases 'to be received in the applicable commitment period' and 'to be expended' are also relevant because they are a clear indication that Congress intended the courts to determine 'projected disposable income' as of the petition date forward."); *In re Crittendon*, 2006 WL 2547102 at *3 ("Accordingly, 'disposable income' will be determined in this case by applying section 707(b)(2)(A) and (B) according to the pertinent circumstances existing on the date of the confirmation hearing, rather than on the basis of the circumstances existing on the petition date.")

A minority of courts have rejected the "projection" view for a "snapshot" view. The "snapshot" view interprets § 1325(b)(3)'s use of "shall" as absolutely requiring courts to determine an above-median debtor's expenses under § 707(b)(2) alone. The courts then focus on § 707(b)(2)'s "scheduled as contractually due" language to conclude that courts must consider whether an expense is allowed by § 707(b)(2) based on the debtor's circumstances as of the petition date. Under this view, as long as the debtors have not surrendered the collateral as of the petition date, the debtors are entitled to include payments on collateral within the debtors' projected disposable income calculation. Under this view, whether or not debtors will actually make payments on the secured debt during the life of their confirmed plan is irrelevant. These courts interpret "project" as Congress's direction for the courts to multiply the monthly disposable income amount by the number of months encompassed by the proposed plan. *See, e.g., In re Burmeister*, 378 B.R. at 230 ("Because [the debtors] were legally bound by the mortgage on the petition date, they were obligated to deduct those payments when calculating their disposable income on Form B22C."); *In re Sackett*, 374 B.R. at 73 (Although when computing the amounts reasonably necessary to be expended for above median income debtors, Section 1325(b)(3) refers back to Section 707(b)(2) to determine the average monthly payments

contractually due to secured creditors, in this Court's view, the applicable date in Chapter 13 to determine whether a creditor is a secured creditor is the effective date of the plan."); *In re Oliver*, 2006 WL 2086691 (Bankr. D. Or. June 29, 2006).

The Ninth Circuit also recently issued an opinion that challenges some of the conclusions in this Memorandum Opinion. *In re Kagenveama*, 2008 WL 2278681 (9th Cir. June 5, 2008). In *Kagenveama*, the debtor's Form B22C disposable income calculation produced a negative number. *Id.* at *1. However, the debtor's actual chapter 13 plan proposed to pay approximately $1,000 per month. *Id.* The bankruptcy court calculated the debtor's projected disposable income by multiplying the B22C disposable income amount by 36, the number of months of the proposed plan. *Id.* The Trustee appealed, contending that § 1325(b)(1)'s "project" language requires courts to modify the Form B22C disposable income amount to account for the debtor's future circumstances. *Id.* at *2. The Ninth Circuit affirmed the bankruptcy court. *Id.* The Court reasoned that § 1325(b)'s disposable income formula would be rendered irrelevant if "projected" was interpreted in a manner that allowed courts to vary the Form B22C disposable income amount. *Id.* at *2–5.

The Ninth Circuit did not addresses the preliminary question of how "disposable income" itself should be calculated under § 1325(b). Nor did the Court address the issue central to this case: whether an above-median debtor's projected disposable income calculation may include payments on debt secured by surrendered collateral. Nevertheless, to the extent that the Ninth Circuit's reasoning on the income side of the projected disposable income ledger is intended to apply to the expenditure side of the ledger, it would be inconsistent with the outcome of this case. The Court's holding adopted a static, snapshot approach to calculating projected disposable income under § 1325(b).

The "snapshot" view minimizes language throughout § 1325(b), ignores § 707(b)'s variant role in chapter 7 versus chapter 13 cases, and overlooks the Supreme Court's direction to consider future circumstances when fashioning present remedies. *See Marrama v. Citizens Bank of Mass.*, 127 S.Ct. 1105, (2007); *Till v. SCS Creditor Corp.*, 541 U.S. 465, 124 S.Ct. 1951 (2004).

The "snapshot" view ignores the independent language contained in § 1325(b)(2)(A)–(B) that requires allowed amounts to be paid on one of the four allowed expenditures. The "snapshot" view also erases any meaning from § 1325(b)(1)'s use of "projected." Section 1325(b) contains numerous future-orientated words suggesting that "project" means more than to simply multiply a snapshot amount by a number of months. Section 1325(b)(1)(B) requires a debtor's plan to commit all the debtor's *"projected* disposable income." Section 1325(b)(1) requires the court to consider the debtor's disposable income "*to be* expended" and as of the "*effective date* of the plan." Section 1325(b)(2) requires the court to calculate a projected disposable income for below-median debtors based on payments "*to be* expended." Section 1325(b)(2)(A)(i) allows debtors to include a domestic support obligation that "first becomes payable *after the date the petition is filed*." Section 1325(b)(2)(A)(ii) allows debtors to expense charitable contributions "not to exceed 15% of gross income of the debtor *for the year in which the contributions are made*." Section 1325(b)(3) allows above-median debtors to include 707(b)(2) expenses that are "*to be* expended. The theme of § 1325(b)(1)'s language directs courts to the future.

The "snapshot" view also overlooks § 707(b)(2)'s different applications in chapter 7 and chapter 13 cases. In a chapter 7 case, § 707(b)(2) serves as the "means test" used to determine whether a debtor should be allowed to file a chapter 7 rather than a chapter 13 case. 11 U.S.C. §

707(b)(2). To make this static decision, courts must look at the debtor's circumstances as of a particular moment in time. The Court does not disagree with the "snapshot" view in the chapter 7 context. However, in a chapter 13 case, § 707(b)(2) serves as one component in a detailed formula used to determine how much a debtor must pay through their chapter 13 plan. In the chapter 13 context, the decision is not static. A debtor does not make only a single payment under their chapter 13 plan. The debtor, if successful, makes 60 payments extending into the future for five years. A test used to make a decision for today can not be applied in the same way to make a decision for 60 different tomorrows. A chapter 13 case is a saga, not a snapshot.

Holding that "projected" requires courts to consider a debtor's future circumstances does not end the analysis. The Court must still consider the dates on which the projection begins and ends.

### a. Projection Date

Trustee Peake, like the Gonzalezes, also argues for a snapshot, but his picture would be taken at a later date. Trustee Peake contends that, because the Gonzalezes are surrendering their home, the projected expenditure for housing is the amount provided by § 707(b)(2). The argument assumes that the Court's projection view can not extend past the plan confirmation date.

Courts have interpreted "projected" in a manner that supports Trustee Peake's position. Some courts limit the time-horizon for which the court can project by holding that courts must determine an above-median debtor's allowed expenses based on the debtor's "projected" circumstances as of the plan confirmation date. These courts reason that § 707(b)(2) allows deductions only for payments on secured claims "scheduled as contractually due." On the plan confirmation date, payments on surrendered collateral are not "scheduled as contractually due."

These courts reason that a confirmed plan constitutes a new contract.  Consequently, these courts hold that a debtor's payment obligations are defined based on the plan.  Because the plan does not provided for payments on surrendered collateral, these courts find that those payments are not "scheduled as contractually due." *See, e.g., In re Van Bodegom*, 383 B.R. at 452 ("[O]ne looks at whether mortgage payments are 'scheduled as contractually due' as of the effective date of the plan, and not as of the date the petition was filed, in determining whether those payments can be subtracted from current monthly income to obtain projected disposable income."); *In re Sackett*, 374 B.R. at 73 ("the applicable date in Chapter 13 to determine whether a creditor is a secured creditor is the effective date of the plan"); *In re McPherson*, 350 B.R. at 46 ("once a plan is confirmed, and the property of the estate has vested in the debtor, the secured creditor's rights and interests are then defined strictly by the provisions of the plan"); *In re Crittendon*, 2006 WL 2547102 at * 3 ("[T]he court must determine the 'disposable income' of the debtor as of the effective date of the plan which generally is regarded as the date of confirmation.").

Under this interpretation, the Gonzalezes' housing expenditure would be limited to the IRS standard deduction allowed by § 707(b)(2).  On the Gonzalezes' proposed plan confirmation date, the Gonzalezes are projected to be renting a residence rather than owing secured debt obligations on a residential mortgage.

The Court rejects Trustee Peake's theory that, as a matter of law, a projected expenditure's allowance or disallowance is determined based on the debtor's circumstances as of the plan confirmation date.  Just as the Court can not project that the home mortgage expenditures will be made for the 60-month period of the proposed plan, so also the Court can not determine that, as a matter of law, the Gonzalezes will remain in leased housing for the 60-month period.  A projection based solely on petition-date housing arrangements would obviously

underestimate actual, future disposable income.  Similarly, a projection based on confirmation-date housing arrangements could easily overestimate actual, future disposable income.

If the Gonzalezes file an amended plan, the Court will hold an evidentiary hearing.  The evidence may demonstrate that the Gonzalezes will continue to rent a residence throughout the plan period.  Alternatively, the evidence may demonstrate that the Gonzalezes will continue renting for a portion of the plan period, and purchase a home later in the period.  If the evidence demonstrates that the Gonzalezes will move during the 60-month period, then the Court's projection will take into account the forecasted move.

The Court recognizes the uncertainty in a projection.  However, the Court finds that the uncertainty is necessitated by Congress' directive that bankruptcy courts "project" future disposable income.  The Court finds the Supreme Court's Opinion in *Till v. SCS Creditor Corp.* instructive. 541 U.S. 465, 124 S.Ct. 1951 (2004). In *Till*, the Supreme Court considered what interest rate should be applied to secured claims when determining a secured claim's present value under  § 1325(a)(5)(B). *Id.* The Court held that the proper interest rate should be the national prime rate, plus an additional adjustment that takes into account the debtor's circumstances. *Id.* at 1961 ("The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan."). The Court held that a court "must hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment." *Id.* To account for the debtor's default risk, courts must project the debtor's future circumstances and determine an appropriate risk adjustment based on the forecasted circumstances.  The Supreme Court recognized that bankruptcy courts are in the business of forecasting future events.

The Supreme Court's recent *Marrama* opinion also teaches that bankruptcy courts should

consider future events when fashioning present remedies. *Marrama v. Citizens Bank of Mass.*, 127 S.Ct. 1105, (2007). In *Marrama*, the Supreme Court held that a debtor's seemingly absolute right to convert a case from chapter 7 to chapter 13 was circumscribed by a court's statutory prerogative to reconvert the case from chapter 13 to chapter 7. *Id.* The Court held that it was unnecessary to go through the hoops of conversion and re-conversion, simply to end up in the same chapter 7 position. *Id.*

Both Trustee Peake's and the Gonzalezes' bright-line "snapshot" tests would simply add cost and delay to inevitable conclusions. A chapter 13 debtor, a chapter 13 trustee, or the holder of an allowed unsecured claim may propose to modify a confirmed plan "at any time after confirmation of the plan but before the completion of payments under such plan." 11 U.S.C. § 1329(a). When considering whether to approve a proposed modification, the Court considers §§§ 1322(a)–(b), 1323(c) and 1325(a). Notably absent is § 1325(b). Accordingly, when considering a modification, the Court considers (among other things) whether the modification was proposed in good faith, but does not consider § 1325(b)'s projected disposable income test. This is true for both above and below-median income debtors.

In this Circuit, a proponent of a modification need not demonstrate that a debtor's circumstances have changed:

> Some courts have required an unanticipated, substantial change to occur before permitting such plan modification. *See In re Hoggle*, 12 F.3d 1008, 1011 (11th Cir. 1994) ("Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation."); *In re Furgeson*, 263 B.R. 28, 37-38 (Bankr. N.D. N.Y. 2001) (citing cases supporting this view); see also 5 NORTON BANKR. L. & PRAC. 2d § 124:2 (noting several courts require "a substantial or even unanticipated change in circumstances, or else the creditor is bound by confirmation of the original plan"). A growing number of courts, however, do not require such a change. *See, e.g., Barbosa v. Soloman*, 235 F.3d 31, 41 (1st Cir. 2000) ("refrain[ing] from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329 "); *In re*

> *Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994) (emphasizing that, "[b]y its
> terms, § 1329 does not provide for any threshold requirement to modify a
> bankruptcy plan"); *In re Sutton*, 303 B.R. 510, 516 (Bankr. S.D. Ala.
> 2003) (citing *Witkowski* for the proposition that § 1329 's plain language
> imposes no substantial change requirement); *In re Sounakhene*, 249 B.R.
> 801, 803 (Bankr. S.D. Cal. 2000) ("A showing of substantially changed
> circumstances is not a prerequisite to plan modification."); *In re Phelps*,
> 149 B.R. 534, 538 (Bankr. N.D. Ill. 1993) (noting "Congress specifically
> provided for a change in circumstances test under other provisions of the
> Bankruptcy Code, including at least one in Chapter 13"). Because we
> agree with this latter approach, we need not consider whether Debtors'
> income-tax refund constituted a substantial or unanticipated change.

*In re Meza*, 467 F.3d 874, 877-78 (5th Cir. 2006).

Accordingly, either party's "bright line" test would be a costly exercise in futility. If the Court accepts the Gonzalezes' interpretation of the law, Trustee Peake could promptly file a motion to modify the Gonzalezes' confirmed plan and the Court would determine whether a payment adjustment was appropriate. Conversely, if the Court accepts Trustee Peake's interpretation, the Gonzalezes could promptly seek to modify the confirmed plan when the Gonzalezes acquired alternative housing. Neither alternative provides the proper method for resolving this dispute. Instead, the Court must do what the statute commands. The Court must *project* the Gonzalezes' disposable income for the term of the plan. If the Court errs, a modification can always be considered. However, if the Court's projection proves accurate, no modification would be required.

The Court's view of "projection" with respect to expenditures is also consistent with the developing majority approach to determining debtors' projected current-monthly-income. *In re Meek*, 370 B.R. at 301 ("the advocates of a flexible approach [to calculating projected current-monthly income] may be in the majority thus far") (citing *In re Kibbe*, 361 B.R. 302 (B.A.P. 1st Cir. 2007)). These Courts have considered situations where a debtor changed employment either just prior to filing a bankruptcy petition or after filing but before confirmation. The new

employment brought a significant increase or decrease in income so as to render the current-monthly income based on historical data divorced from reality.  These Courts rejected assertions that debtors' current-monthly income under § 1325(b)(2) should be based solely on historical data.  Rather, these courts start with the historical income provided by § 1325(b)(2), and adjust that amount based on debtor's projected circumstances.  *See ,e.g., In re Lanning*, 380 B.R. 17, 25 (B.A.P. 10th Cir. 2007) ("Where it is shown that Form B22C disposable income fails accurately to predict a debtor's actual ability to fund a plan, that figure may be subject to modification."); *In re Kibbe*, 361 B.R. at 312 ("Congress intended the term 'projected disposable income' for below-median income debtors to be forward-looking and reality based and not grounded in blind adherence to any artificial formulation.")[6], *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Pak*, 357 B.R. 549, 552–53 (Bankr. N.D. Cal. 2006) ("In determining whether a plan provides all of the debtor's 'projected monthly income,' a court should attempt to predict what the debtor's disposable income during the term of the plan will be, using the definition of 'current monthly income' set forth in 11 U.S.C. § 101(10A)."); *In re Casey*, 356 B.R. 519, 522–23 (Bankr. E.D. Wash. 2006) ("the word 'projected' . . . requires a court to examine anticipated disposable income rather than historical disposable income, estimated disposable income, or some other type of disposable income."); *In re Louviere*, 2008 WL 925824 at *4 (Bankr. E.D. Tex. Apr. 4, 2008) ("If the term 'projected' disposable income is to have any meaning, it must be rooted in reality and based upon a debtor's actual ability to perform.").

The Court discerns no statutory or logical basis for calculating projected expenditures differently from projected current monthly income.  The Court agrees with the reasoning the First Circuit Bankruptcy Appellate Panel applied to the income portion of the projected

---

[6] Though the *Kibbe* court referred to below-median debtors, § 1325(b)(2) provides the same current-monthly income definition for both above and below-median debtors. *In re Kibbe*, 361 B.R. at 304.

disposable income calculation:

> Rigid adherence to a debtor's prepetition income history would commonly produce results at odds with both congressional purpose and common sense. If a debtor's prepetition averaged income was significantly higher than the debtor's income at plan confirmation, statutory indifference to the change at confirmation would doom any chapter 13 plan. Conversely, if, as here, a debtor's prepetition averaged income was significantly lower than his or her income at plan confirmation, the debtor would be granted a windfall. As a result, unless a debtor's prepetition averaged income was substantially the same as it was at plan confirmation, either creditors would be cheated or, by dint of plan failure, neither the debtor nor the creditors would obtain the benefits that Congress intended for both under chapter 13 of the Bankruptcy Code. We find it unlikely that Congress intended either result. The intent of Congress can be best gleaned by examination of the legislative history surrounding the enactment of BAPCPA:
>
> > The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means-testing"), *which is intended to ensure that debtors repay creditors the maximum they can afford.*
>
> H.R.Rep. No. 109-31, pt. 1, at 2 (2005) (emphasis supplied). The words "maximum" and "afford" tell the story. Congress intended that debtors pay the greatest amount within their capabilities. Nothing more; nothing less.

*In re Kibbe*, 361 B.R. at 314.

Though *Kibbe* considered the current monthly income rather than then the expense portion of § 1325(b)(2)'s projected disposable income calculation, identical logic applies here. Both *Kibbe* and this Court consider the meaning of "projected." Section 1325(b)(2)'s projection requirement applies to "disposable income." "Disposable income" includes two basic parts: income and expenses.

### v. Allowed Amounts for Projected Allowed Expenditures

The fifth component requires that the amount of the projected allowed expenditure must be equal to or less than the allowed amount. 11 U.S.C. § 1325(b)(2) ("'disposable income' means current monthly income . . . less *amounts* reasonably necessary to be expended . . . ) (emphasis added). Section 1325(b) defines allowed amounts differently for below and above-

median debtors.

### a. Below-Median Debtors

If the Gonzalezes had a below-median income, the Court would determine the Gonzalezes' allowed amounts under § 1325(b)(2).  Section 1325(b)(2)(A)–(B) provides that the allowed amounts are the amounts reasonably necessary to be expended for a projected allowed expenditures.    "Amounts"  is  not  defined  under  §  1325(b)(2).    Consequently,  under § 1325(b)(2)(A), courts use their discretion to determine whether an amount is an amount reasonably necessary to be expended for a projected allowed expenditure.  For below-median debtors,  allowed  "amounts"  was  largely  unchanged  by  BAPCPA  and  has  caused  little controversy.

### b. Above-Median Debtors



For above-median debtors, Congress removed judicial discretion to determine allowed amounts for projected allowed expenditures. 11 U.S.C. § 1325(b)(3). Section 1325(b)(3) defines allowed "amounts" for above-median debtors.  That section provides:

> **Amounts** reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . .

*Id.* (emphasis added).

Section 707(b)(2) generally has three categories of expenditures: living expenses, priority

claims, and payments on secured debts.   Amounts allowed for living expenses are generally

determined by IRS guidelines.   Amounts for priority claims are well defined.   Amounts allowed

for payments on secured debts are defined by Section 707(b)(2)(A)(iii)(I)–(II).   That section

provides:

> The debtor's average monthly payments on account of secured debts shall be
> calculated as the sum of—
>> (I) the total of all amounts *scheduled as contractually due* to secured
>> creditors in each month of the 60 months following the date of the
>> petition; and
>> (II) any additional payments to secured creditors necessary for the debtors,
>> in filing a plan under chapter 13 of this title, to maintain possession of the
>> debtor's primary residence, motor vehicle, or other property necessary for
>> the support of the debtor and the debtor's dependents, that serves as
>> collateral for the secured debts; divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii)(I)–(II) (emphasis added).

Consequently, for above-median debtors, the Court has discretion to determine whether a

an expenditure is an allowed expenditure under § 1325(b)(2)(A)–(B) and a projected allowed

expenditure under § 1325(b)(1)(B).   But, once those determinations are made, § 1325(b)(3)

eliminates judicial discretion to determine the allowed *amounts* for the projected allowed

expenditure.

For example, consider the Gonzalezes' budget for food, clothing, household supplies,

personal care, and miscellaneous expenditures.   These expenditures are necessary for

maintenance or support, and will occur during the course of the Gonzalezes' plan.   The budgeted

items therefore meet § 1325(b)(2) and § 1325(b)(1)'s requirements.   The Gonzalezes claimed an

expenditure allowance of $1,978.00 per month for the expenditures, an amount allowed under §

707(b)(2).   The Court does not have discretion to determine that an *amount* more or less than

$1,978.00 per month for these categories of expenditures is reasonably necessary for

maintenance or support[7]. For above-median debtors, Congress defined the *amounts* debtors can claim for projected allowed expenditures.

Congress has also defined *amounts* debtors can claim for payments on secured debt. The allowed *amounts* for secured debt is provided by § 707(b)(2)(A)(iii). To determine the total *amount* allowed for secured debt payments, the Court must sum all payments contractually due during the 60-month plan period. 11 U.S.C. § 707(b)(2)(A)(iii). If, as in this case, the asset is the debtor's primary residence, the Court adds expense amounts for additional payments that must be paid to secured creditors for the debtor to maintain possession of the residence. The total of the foregoing amounts is then divided by 60. The Gonzalezes claim that the foregoing calculation for secured debt payments entitles them to an average monthly expenditure of $4,539.00. Trustee Peake does not challenge the mathematics of that calculation; rather he challenges whether the deduction should be allowed at all. The Court determines that—if the expenditure should be allowed—it should be allowed in the amount of $4,539.00 per month.

Other Courts have interpreted § 1325(b)(2) and § 1325(b)(3) in a manner suggesting that Courts have discretion to determine allowed amounts for above-median debtors. These Courts start with § 1325(b)(3) rather than § 1325(b)(2). These Courts imply that § 1325(b)(3) imposes a cap on an above-median debtor's allowed expenses by requiring calculation of the expenses under § 707(b)(2). The capped expenses determined by § 707(b)(2) and allowed by § 1325(b)(3) are then subject to § 1325(b)(2)'s requirement that the expense be reasonably necessary for the "maintenance or support" of the debtor and are actually "to be expended." Presumably, the Court could adjust downward the amounts provided by § 707(b)(2) to an amount the Court

---

[7]   Because § 1325(b)(3) incorporates § 707(b)(2)(B) as well as § 707(b)(2)(A), the Gonzalezes would have had the opportunity to obtain more than the $1,978.00 per month "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(A). No such showing was attempted in this case.

believes, in its discretion, is the minimal amount necessary for maintenance or support or that will actually "be expended." *In re McGillis*, 370 B.R. at 730 ("Section 1325(b), not section 707, ultimately controls the determination of disposable income for purposes of plan confirmation under Chapter 13, and that section permits Debtors to deduct only those expenditures that are reasonably necessary for their future support and maintenance."), *In re McPherson*, 350 B.R. at 44 ("The phrase 'reasonably necessary . . . for support' indicates that the amounts, and the payment of the amounts, must be reasonably necessary for the support of the debtor and any dependent."), *In re Long*, 2008 WL 1883473 *5–6 (citing *In re McGillis*, 370 B.R. 720).

The Court disagrees with any implication that amounts determined by § 707(b)(2) can be adjusted by the Court under § 1325(b)(2). The interpretation ignores Congress's clear directive that Court's have no discretion to determine allowed amounts for above-median debtors: "***Amounts*** reasonably necessary to be expended under paragraph (2) ***shall*** be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . ." 11 U.S.C. § 1325(b)(3) (emphasis added). Once the Court has determined that an expenditure is for an allowed expenditure under § 1325(b)(2) and a projected allowed expenditure under § 1325(b)(1)(B), the Court has no discretion to determine the allowed amount for that expenditure. Section 1325(b)(3) defines "amounts reasonably necessary to be expended." Section 1325(b)(2) uses the same language. Congress could not have intended § 1325(b)(2)'s "to be expended" language to authorize judicial discretion to adjust amounts provided under § 1325(b)(3) when § 1325(b)(3)'s definition contains the same "to be expended" language.

The Court believes that the above interpretation is most consistent with the statute's language.[8]

---

[8] Based on the foregoing, the Trustee's objection based on § 1325(a)(3)'s "good faith" requirement is moot.

## Conclusion

Based on the above reasoning, the Court grants Trustee Peake's objection to confirmation of the Gonzalezes' plan.  The Gonzalezes are not entitled to include 60 monthly mortgage payments on their surrendered home within their Form B22C calculation of projected disposable income.  The Gonzalezes have rented a new residence.  The mortgage payment on a home that has been surrendered and will not be used by the Gonzalezes is not an expenditure for maintenance or support, a post-petition domestic support obligation, a qualified charitable contribution, or an allowed business expenses.  Section 1325(b)(2) precludes the Gonzalezes from claiming expenses for an expenditure that is not allowed under § 1325(b)(2)(A)–(B).

The Gonzalezes have 20 days to file an amended plan consistent with this Memorandum Opinion.  The Court will consider the proposed payments under the amended plan after projecting the Gonzalezes' disposable income in accordance with this Memorandum Opinion.  A separate order will be issued.

Signed at Houston, Texas, on July 3, 2008.

MARVIN ISGUR
United States Bankruptcy Judge

**Appendix A**



[1] Issue as to whether Court may sua sponte
raise objection is beyond the scope of this opinion.

**Appendix B**

***11 U.S.C. § 1325(b)***(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--

> **(A)** the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> **(B)** the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

 **(2)** For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended--

> **(A)(i)** for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

> **(ii)** for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

> **(B)** if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

 **(3)** Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with  subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than-

> **(A)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

> **(B)** in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

> **(C)** in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4.

 **(4)** For purposes of this subsection, the "applicable commitment period"--

> **(A)** subject to subparagraph (B), shall be--

**(i)** 3 years; or

**(ii)** not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--

    **(I)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

    **(II)** in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

    **(III)** in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4; and

**(B)** may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

**Appendix C**

*11 U.S.C. § 707(b)(2)(A)&(B)*

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--

    (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or

    (II) $10,950.

(ii)    (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II) In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III) In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by the Executive Office for United States Trustees.

(IV) In addition, the debtor's monthly expenses may include the actual expenses for each

dependent child less than 18 years of age, not to exceed $1,650 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of--

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts; divided by 60.

(iv) The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--

(I) documentation for such expense or adjustment to income; and

(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

(iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied

by 60 to be less than the lesser of--

    (I) 25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

    (II) $10,000.